Good morning. Illinois Appellate Court First District Court is now in session. The Second Division, the Honorable Justice Margaret S. McBride presiding. Case number 22-1875, Peeble v. Emily Wynder. Good morning, everyone. My name is Margaret McBride, and along with Justice Ellis and Justice Copps, we will be presiding over this case. Before we begin, I would like to let the attorneys know that our procedure for Zoom is to allow each side about 10 minutes of uninterrupted argument. From that 10 minutes, Ms. Cohen, you may save some time for rebuttal, but you'll have your 10 minutes. Then we will have questions by the judges. Then after that, Mr. Slavens, you will have an opportunity to respond. Same time frame, 10 minutes. So with that, we will first ask that you identify yourselves formally for the record. For the appellant. Good morning, Your Honor. Sally Cohen for defendant Emily Wynder. Good morning, Ms. Cohen. Good morning, Your Honors. Zachary Slavens on behalf of the people of the state of Illinois. Good morning. All right. With that, Ms. Cohen, you may begin your 10 minutes of uninterrupted argument. But if you'd like to save some time out for rebuttal, let me know. Sure. I'd like to reserve about three minutes. OK. All right. So you may proceed. Your Honors, this case is about reasonable doubt and the limits of unreasonable inferences. The question is whether the state met its burden to prove through competent evidence and reasonable inferences therefrom that Ms. Wynder, who was stopped by police while driving a car with two friends, had knowledge that the car she was driving was in fact a stolen car. The answer is no for three reasons. First, the state presented no direct evidence that Ms. Wynder knew the car was stolen, nor any evidence of surrounding facts or circumstances that would lead a reasonable person to believe the car was stolen. At the time Ms. Wynder was pulled over, she was driving the car in broad daylight on a public road. And when the police initiated the stop, she made no attempt to flee and cooperated throughout the entire encounter. The car itself had no visible damage, no peeled steering column, no broken windows, no screwdrivers or exposed wires in sight. And Ms. Wynder had been operating the car with the car's electronic key fob, not a flash drive or other type of jailbroken key. The state also failed to present any evidence that Ms. Wynder was involved in or aware of the theft of the car or the break-in that preceded it, which took place a full two weeks before the traffic stop. Indeed, the only affirmative evidence presented by the state to prove Ms. Wynder's knowledge consisted of Ms. Wynder's supposed lies to Officer Figueroa during the stop, which was audio and video recorded by Officer Figueroa's body-worn camera. But a review of that footage reveals that the only demonstrable falsehood contained there was Ms. Wynder's initial use of a false name and birth date when asked for her identification. Ms. Wynder corrected this error after just three minutes of further conversation with Officer Figueroa, and as Ms. Wynder explained at trial, she initially provided this false name because she was aware she had an outstanding arrest warrant. But consciousness of an outstanding arrest warrant in an unrelated matter is not tantamount to consciousness of guilt for the present offense. This is especially so where Ms. Wynder did not persist in the use of this alias or perpetuate the falsehood once the gravity of the stop became known to her. The remainder of what the state characterizes as Ms. Wynder's lies were statements Ms. Wynder made to Officer Figueroa over the course of just 20 seconds, and none were in fact lies. So here I should note that our Supreme Court has held our reviewing court's obligation to view the evidence in the light most favorable to the prosecution does not mean that the reviewing court construes the record to contain evidence that the state failed to produce. Thus, Ms. Wynder's statements that one, she was borrowing the car from a friend, two, that the car was Cheryl's, and finally three, that she got the car from Darryl Williams should not be treated as lies where the prosecution never introduced any evidence to rebut them. Indeed, these statements were consistent with Ms. Wynder's trial testimony in which she explained that she was driving the car with permission from her friend and passenger Darryl Williams, who had previously told Ms. Wynder that he was borrowing the car from his aunt Cheryl. What is more, the body camera footage also shows Darryl Williams conceding that it was he and not Ms. Wynder who first came to be in possession of the car, which therefore corroborated the statement Ms. Wynder made just seconds earlier. So taken together, the state's affirmative proof of knowledge consisted of only two facts, that Ms. Obviously, Graciela Guzman works for a group that would stop kids from attending the best public schools. What is that? Sorry. That's taken together. Okay. What was that? I heard the background noise. Sorry about that. Oh, that's okay. Okay. Just want to make sure we knew where it was coming from. All right. You may continue or unless you're. Of course. Taken together, the state's affirmative proof of knowledge consisted of only two facts, that Ms. Wynder initially provided false identifying information, and that Ms. Wynder waited under just one minute to identify Darryl Williams as the friend from whom she received permission to drive the car. No rational trier of fact could have found that this scant and attenuated evidence proved Ms. Wynder had knowledge the car was stolen beyond a reasonable doubt, especially where Ms. Wynder's behavior was explained. As the court stated in People v. Sanchez, a reasonable inference may support a criminal conviction, but there is a line between a reasonable inference and mere speculation. In People v. Gordon, this court reversed the conviction for possession of a stolen vehicle where the circumstantial evidence of the defendant's knowledge that the car was stolen was in fact stronger than the state's evidence here. In Gordon, the defendant originally claimed to police that he did not know who owned the car, but later claimed that he had ridden in the car with the owner previously. He also claimed that he had been hired by a friend to replace the car's new radio with an older factory model, and finally that he was driving around in the car to test that radio, despite the fact that testing a radio does not require driving the car. Indeed, the jury in Gordon did not believe the defendant's story and found him guilty. Nevertheless, this court found on appeal that notwithstanding the jury's credibility finding, the state's evidence was insufficient to satisfy the knowledge element and found relevant to that holding facts that are also present here. Gordon's friend gave him permission to drive the car in broad daylight in a public area where the car was known and the keys were in the ignition. Gordon made no attempt to flee and there were no signs of an authorized entry into the vehicle. So here, as in Gordon, the state's evidence simply did not support a reasonable inference of Ms. Winder's knowledge. Second, the state's trial evidence further failed to establish that Ms. Winder had exclusive unexplained possession of the car, and thus the trial court's reliance on the statutory inference, which permits a finding of knowledge only where such exclusive unexplained possession has been shown, was error. Ms. Winder's possession of the vehicle is far from unexplained. She offered a consistent, reasonable, and corroborated explanation for her possession of the car. She did not know it was stolen. Instead, she was driving the car with permission from Daryl Williams, who rode in the car with her and who told her he had borrowed the car from his Aunt Cheryl. The defense also presented the testimony of Raymond Parker, the car's second passenger, who likewise testified that when he, in the presence of Ms. Winder, asked Daryl Williams how he got the car, Williams told him it was his aunt's. So although it is true that the finder of fact is not required to accept the defendant's explanation for their possession of a stolen vehicle, and may reject it if the story is inherently implausible, improbable, or rebutted by other evidence, here, there was nothing implausible or improbable about Ms. Winder's corroborated explanation. In People v. Ferguson, this court remarked that as the statute is presently construed, a person who gains possession by innocently borrowing a stolen vehicle from a friend or family member will not suffer the application of the inference unless other unexplained, improbable facts and circumstances also existed. Here, because no other unexplained, improbable facts or circumstances existed, Ms. Winder should not have suffered the application of this inference. So to be clear, it is not this court's role to second guess the trial court's assessment of Ms. Winder's credibility, and we are not asking that you do so. The point here is rather that the trial court's credibility determination is not a competent substitute for the state's evidence of Ms. Winder's knowledge. As the court explained in Sanchez, the fact that we do not believe the defendant's testimony would not mean that the state proved beyond a reasonable doubt that she had the necessary knowledge. It is well established under Illinois law that the state bears the burden of proving every element of the offense, and that to be sustained, the conviction must rest upon the strength of the people's case and not on the weakness of the defendants. So here, even though the trial court did not believe Ms. Winder's testimony, or Mr. Parker's for that matter, that does not mean Ms. Winder's possession was in fact unexplained, or that Ms. Winder's knowledge was properly established by the state's evidence. But the statutory inference was inapplicable here for still a second reason. Ms. Winder's possession of the vehicle was not exclusive. She had two passengers. Although Ms. Winder does not contest that the state established exclusivity sufficient to satisfy the possession element, the fact that Ms. Winder jointly possessed the car with her passengers significantly weakens any inference that Ms. Winder in particular knew it was stolen. In other words, it may be reasonable to infer that somebody in the car knew it was stolen, but it does not reasonably follow that Ms. Winder knew it was stolen simply because she was the driver. You know, Ms. Cohen, I'm just letting you know, you probably had 10 minutes already, just so you know. Okay, well I'll have both. And we'll still give you time to rebuttal. Certainly. Third here, even if the state had proved exclusive unexplained possession, under the facts of this case, drawing the inference violated Ms. Winder's due process rights, and the inference was therefore unconstitutional as applied. And for these reasons, I ask that you vacate Ms. Winder's conviction. All right, thank you. Do either of the panel members have questions for Ms. Cohen? Yeah, I have a couple of questions, if I could. Good morning, Ms. Cohen, how are you? Morning, Amrit, how are you? Good, thank you. Thanks for your presentation. So, I understand your position that if the state doesn't prove it, it doesn't matter whether you believe the defendant because the state didn't prove it and they have to go first. But part of what the judge is doing here is looking at the credibility of the defendant in the case in chief, watching the video, for example. And the first thing the defendant does when she's pulled over is she tells a lie, right? I mean, she says, she gives a false name. Is that her sister's name? Is that what that was? Yes. Okay. And then she, when she then answers whose vehicle is this, she's maybe not the most forthcoming, a little tentative in her answers in what you would probably expect would be a relatively easy thing to answer. And then there's this discussion of Kevin Steele. Now, I need to stop there. Did we find out who Kevin Steele is? No. Who Kevin Steele is, is not in the record. Okay. There's no information in the record that would say Kevin Steele has some relationship to Cheryl. No. Okay. Okay. Would a judge be within her purview to look at that initial, obviously an initial lie, and she has an explanation for it, but nevertheless, to look at that initial lie and look at how she interacted with the police officer initially and read from that the defendant knew that there was something wrong with her possession of that car? Why isn't that something the trial judge could have done? So regarding the initial use of the false name, you know, Ms. Weiner did explain at a trial that she was aware that she had an outstanding warrant. And I think it's significant that as the gravity of the stop became known to her, she gave her accurate name. Had she known that this was about a stolen vehicle, she either would have persisted with the use of the alias or not use it at all. Once she's being asked about where do you get this car, those sorts of questions that put her on notice that this is much more serious than just a traffic violation, that's when she is more forthcoming. So I think that leads to the inference that initially she had no idea that they were being pulled over for that reason. And the lie about her identity was really just to avoid pulling up this warrant. I mean, that's that's one inference. I could draw a different inference. I could say that she was beginning to realize that there was going to be an arrest taking place and her lie was going to be exposed. So better use she fronted. I'm not saying that's what happened. I'm just trying to I'm just trying to look at this through the in the light most favorable to the state. And I'm and I'm trying to understand your argument that that no reasonable fact finder could could infer guilty knowledge from her behavior, not so much her testimony at trial. You make a good point about that, but her behavior at the time. So I would like to have people be Gordon in which the defendant originally claimed that he didn't know who owned the car, even though he was in the car with this friend that he later said he borrowed it from. And there was evidence presented that he did know who owned the car. People act evasively or with nerves when they're initially encountered by the police for a whole host of reasons. Of course, you can draw inferences from their behavior. But the point here is that the inference must be supported beyond a reasonable doubt, as opposed to it's just one of many inferences you can make from from the conduct in order to support a criminal conviction. That evidence did not reach the standard. Sure. So, her initial statement to the police officer is is untruthful, which is what is your name. And then her first explanation of where she got the car from. Admittedly, it came from Williams, I think, not from her directly, is also kind of an odd answer. It's Kevin Steele. That preceded the Cheryl answer, didn't it? So what happened in the sequence, if you review the footage, is that she first said she was not the one who volunteered the name of Kevin Steele. After she says, I got it from Williams, the officer turns his attention to Williams and said, where'd you get this car? And he said, it's Kevin's car. And then Darryl Williams says to Ms. Winder, what's Kevin's last name? And then Ms. Winder says, Steele. So the evidence from that is that she knew who he was talking about, but she did not ever adopt his answer that the car belongs to Kevin Steele. Yeah. Okay. Okay. Thank you very much. Appreciate it. Justice Copps, any questions? Just one question, if you don't. Hi. Good morning, Ms. Cohen. Excuse me. Is there any evidence or is there anything in the record that tells us how long the defendant had been in possession? I know that Cheryl, the aunt, reported the car missing maybe the 15th or the 14th of September, and then the stop is made two weeks later, 28th. Is there anything to suggest or to give us a sense of how long even Williams or the defendant had been in possession of the car? So Ms. Winder said at trial that she had been picked up in the car a week prior by Williams. So she had seen him in the car previously and had ridden in the car with him. But I don't think that she had possession of that car for the entire week. But Mr. Parker also said that he had seen them in the car earlier that day. So about a week was when the trio of them were in possession of this car. But nothing to support that she might have been in possession soon after? No. Williams, don't mix me up my names now. Williams was identified or saw them in the car. Okay. I have nothing else. I have just a couple. Is two weeks recent? In my view, it is not recent enough to support an inference of knowledge. Cars can change hands a lot over the course of two weeks. But do you cite any case that would say that two weeks isn't recent? I do not have a case on the top of my head to suggest that two weeks is not recent in terms of the recency. But if common sense leads to the view that recency means your possession of the vehicle would imply knowledge because you would have had to be a part of the theft or have knowledge that it was stolen. And for instance, if you're found in the car five hours after it was reported stolen, that would be proximate in my view. Two weeks, especially in the modern world, is a lot of time for a stolen car to change hands that wouldn't imply anything about... And how would you sum up unexplained? The legal meaning? To me, the legal meaning of unexplained is the plain meaning of unexplained, lacking an explanation. If a person has exclusive unexplained possession of a stolen vehicle, that vehicle did not fall out of thin air. If a person is in a car with no explanation for how they got it, the inference is that you knew it was stolen and the reason you have no explanation is because you were part of the theft or you have guilty knowledge that it was stolen. Here, where the explanation is reasonable and it's not an exclusive possession because the person from whom she received permission to drive the car is sitting next to her. The inference falls apart because although it might be reasonable to infer that somebody in the car, which did not fall out of thin air, has knowledge that it was stolen, in order to draw that inference, you have to basically impute Darrell Williams' knowledge to Ms. Winder. And that's a steep step too far. That's a speculative inference that cannot support proof beyond a reasonable doubt of Ms. Winder's knowledge. Any further questions at this time by the other justices? Okay. Thank you, Ms. Cohen. We'll give you a couple minutes for rebuttal. And Mr. Slavins, it's your turn. You may proceed. Good morning, Your Honors. May it please the court. My name is Zachary Slavins, and I represent the people of the state of Illinois. The evidence at this trial showed that a defendant was stopped driving a stolen motor vehicle. And during that stop, she told a sequence of implausible falsehoods to the officers about who the car belonged to and how it came into her possession. That evidence was more than sufficient to establish beyond a reasonable doubt that she knew the car was stolen. Accordingly, this court should affirm the defendant's conviction because, one, the people proved the defendant's knowledge of the vehicle's stolen nature through circumstantial evidence. Second, the record does not establish that the court drew the inference under the statute. But even if it did, the evidence was more than sufficient to sustain that statutory inference. Turning to the first issue, the evidence at this trial was sufficient to establish through circumstantial evidence that the defendant knew the car was stolen. And just to reiterate, the standard of law is that all inferences must be drawn in favor of the prosecution. All evidence must be viewed in the light most favorable to the people. And applying that standard correctly, it is clear the defendant was proven guilty beyond a reasonable doubt. It's well established under Illinois law that a defendant's knowledge is ordinarily proven through circumstantial evidence. There will very rarely ever be a direct proof of a defendant's knowledge. So you are always proving knowledge through circumstantial evidence. And things like the use of false identities, telling lies, these are matters that are circumstantial evidence of a defendant's consciousness of guilt. And that is precisely how the people proved defendant's guilty knowledge in this case. The body camera and the testimony of the officer in this case showed that right off the gun, defendant lied about her identity. And under, I believe it's Harris, the use of a false identity itself is proof of consciousness of guilt. Now opposing counsel argued that she had an explanation, she was trying to avoid a warrant in Indiana. But again, that is a matter of credibility of an inference to be drawn by the fact finder. And the fact finder in this case clearly did not believe defendant in this case. And that is a fact finding that is entitled to significant deference on appeal. After lying about her identity, defendant then claimed that she got the car from an amorphous friend. Defense counsel in this case emphasized defendant's trial testimony and explanation that she borrowed the car from Williams and he told her it was his aunt Cheryl's. But when asked by police, that's not what she said. She said she got it from a friend in a vague, ambiguous sense, not the individual sitting next to her, which is itself a very peculiar answer. If she had really gotten the car from Williams, why did she not simply gesture to Williams when initially asked and say, I got it from him, it's his car. Instead, she said an ambiguous friend. When challenged, she then twice claimed that the car belonged to Cheryl. Again, in this explanation, she doesn't reference an aunt, just simply Cheryl. After being challenged again at this point, she claims that she got the car from Williams. But again, when challenged by police to provide some explanation of where the car came from, Williams then says it came from Kevin. And it is defendant who volunteers the last name steal. Again, contrasting that with her trial testimony in the narrative, the defendant advances on appeal. If she had really believed the car was Kevin's, was Williams aunt Cheryl's. Why is she volunteering the last name for another fictitious individual who, to answer your honest question, there really is no evidence anywhere in the record aside from the video that Kevin Steele is even a person who exists. Simply taking all of this together, the way in which she answers the officer's questions during the traffic stop, her behavior, all of it strongly suggests that she is lying. She is attempting to evade arrest in this case for driving a stolen vehicle. And what is most telling is that this shifting implausible narrative is all preemptive. Throughout this interaction, Officer Figueroa has never told her that he knows the car is stolen. He pulled over for a front license plate, he went back to the car, and then he comes back and asks these questions. And she's offering this narrative without ever being told that the car has been reported stolen. So she is volunteering this implausible narrative. And that itself also strongly suggests that she's lying to police because she knows exactly what that running of the license plate is going to turn up and that the car is stolen, because she knows that the car is stolen. And the circuit court in this case had the opportunity to observe her on the stand, watch the officer, watch the video, hear this narrative, weigh all of these competing testimony. And it is the one that made the credibility assessment and determined what was true, what was not, what are the facts. And it determined that her testimony was implausible, her explanation was not credible, and it found her guilty. And that is a reasonable fact to determine from the evidence in this case. And that is a fact finding that is entitled to significant deference on review. Defendant relies heavily on the, I believe it was the Gordon case. But the facts in that case are really only superficially similar to this case. In Gordon, the defendant was working on a car driven by a friend. The friend who had the car was a well-known individual who drove that car around all the time. He was friends with the owner. He frequently borrowed it. In fact, the owner in that case even testified if he had known it was the friend who had taken the car, he would not have even reported it stolen. So in that case where an individual is a known and frequent authorized user of a vehicle, the facts in that case are strikingly different from here where Ms. Cheryl testified she didn't give anyone permission to take her car. Certainly not defendant in this case. Nothing to suggest that Williams was driving it with her permission, certainly. And because she testified no one had permission to take her car. Nothing suggests he was a frequent authorized user of the vehicle or known as such. So Gordon really presents a very different factual circumstance or a fairly unique factual circumstance in Gordon. And for all those reasons, this court should affirm that defendant's knowledge was directly proven through the circumstantial evidence. To just briefly address the statutory permissive inference, I believe it was Justice McBride asked, what is the definition of unexplained? And the court in Nivens elaborated a little bit on that and said it's incumbent upon the defendant under the statutory scheme to offer an explanation. But they have to offer a reasonable explanation or else their story may be judged on its improbabilities. So it's not simply that any sort of explanation can be tossed out there and it's immediately accepted. It has to be a reasonable explanation. It has to be weighed and considered. And if you offer an implausible explanation, it will be weighed on its improbabilities. And that is what we have here. Defendant offered an explanation at trial, but it simply conflicts with the way she told all this information to the police officers. It doesn't really make sense. And that is a credibility determination for the trial court that the trial court made in this case. And it weighed defendant's story on its improbabilities. But again, to even reach the question of the statutory permissive inference would require this court find that defendant's falsehoods and behavior and the trial court's finding didn't satisfy the direct proof mechanism. Because if defendant's knowledge is proven through circumstantial evidence, the court may not even reach the question of the statutory permissive inference. Particularly where nothing in this record says the court explicitly relied on statutory permissive inference. So with that, if your honors have any questions, please. Any questions? I do. Just maybe one or two. Thank you, Mr. Slavens. You argued that the defendant volunteered the name Steele. I read the record a little differently. I read the record to support that Mr. Williams offered the name Kevin and inquired of defendant what his last name was. How is that? How do you equate that to voluntarily offering the names Kevin Steele? Yes, your honor. I guess what I mean by that is it's not as if Williams was asked and he said, oh, his name is Kevin Steele. He offered a first name and then turned to defendant and it was she who offered the second aspect of Steele. Wait a minute. I thought the question was, what is Kevin's last name? Yes, your honor. That is not that the defendant offered anything in my view voluntarily. As opposed to responding to Mr. Williams inquiry. Am I misreading the record? No, your honor. The video is a matter of record, so that's simply there to review. It's really just a turn of phrase that I use that she volunteered the last name. Understood. She was asked by Williams, what is Kevin's last name? She replied that it's Steele. So it's simply the fact that she's participating now in this other exchange of identification of where the car came from. And now it's not coming from his aunt, Cheryl, as she testified at trial. Wait a minute. Wait a minute. You're really adding facts that are not of record. I don't know that she's volunteering anything. Other than responding to an inquiry about Kevin's last name. Yes, she she she she stated the last name steal your honor. So the other thing I want to ask you is you said she's been inconsistent. Did she ever say that the car belonged to anybody other than a friend? And the friend name that was offered was Cheryl. You should say the name Cheryl twice more than once. Cheryl. I'm not disputing that this exchange is somewhat awkward. It is. But she says the name Cheryl twice. She says a friend. And then she says Cheryl. And she says Cheryl a second time. Do we know that Cheryl is not her friend? Cheryl testified in this case. She said she doesn't know Emily Winder and did not authorize her to use the car. So the evidence suggests that there is no relationship between these two individuals at all. And then how does the statement that the car belongs to Cheryl go to the element of knowledge? Well, as we argue in our brief, your honor, the fact that she's using the true owner's name was likely a tactic to attempt to diffuse suspicion. You know, by offering the name of the true owner by saying I got it from a friend might imply to the officers. You know, at this time, she thinks it's a stop for a missing front license plate. You know, the inference to draw there is that she's attempting to diffuse suspicion and hopefully just get away with a ticket as opposed to the officers arresting her for possession of a stolen vehicle. Because really reading a lot into that record with these inferences you're offering up, aren't we? These are inferences that could reasonably be drawn from the record, though. And that is for the fact finder. And those inferences are entitled to significant deference on review. Your honor. The only inference the trial judge you was that she found the defendant not credible. She didn't draw these other inferences. I didn't see anything like that on the record. The trial court did not expressly draw these specific interpretations of the evidence, your honor. But it's the verdict of the trial court that's under review. And the court clearly found that these explanations offered by defendant were not credible and that she knew the car was stolen. And that is a fact finding that finds ample support in the record and should be affirmed. Thank you, Mr. Slavin. I have nothing else. Justice Ellis. You're on mute. Okay. Is that better? Yes. Okay. Thank you very much, Justice McBride. Mr. Slavin, good morning, first of all. Good morning. Morning. I think that this may well overlap with Justice Cobb's questions. But and I apologize. I am actually looking. I'm trying to look at the transcript right now, even though you don't see that on Zoom. As I understand this. The first question the officer asks her is her name and she doesn't tell the truth. We know that. That's a strike against her. I would readily agree. But then her answer as to who to who this car belongs. She twice says it's Cheryl's car. And we know. I don't know if we know, but certainly we heard testimony in the defense case in chief that that was her understanding that it was Cheryl's car. Now, once it goes beyond that, suddenly this her friend gets involved and Mr. Williams's role in this is looking pretty shady, I have to say, but he's not on trial right now. Winder is. Winder. How do you pronounce her name? You know, Williams says from a friend. And the cop, the police officer says from a friend. What friend? And Williams says, Kevin, what's that? Kevin's last name. And Winder says Steele, because apparently that is his name. If if if there is such a person, Williams repeats the word Steele. And then the officer, understandably, is now saying, well, I'm hearing different things. I'm hearing Cheryl. I'm hearing Kevin Steele. And at that point on, the conversation is just the officer and Williams. I don't see any other conversation that involves. Winder. Now, I'm not criticizing the officer. The officer had every reason in the world to believe this was a stolen vehicle. And it was a stolen vehicle, it sounds like, but. Now that we're looking at it on review and or even sitting in the shoes of the trial judge. What specifically is it that Winder said, if you mix in Williams, the whole thing becomes incredibly inconsistent, you know, different names, the story is changing, it's going to put an officer, it's going to make the radar go up. But but looking at it at trial. Doesn't Winder have a pretty plausible argument here that, you know, she other than lying about her name. That she was just telling her what she reasonably believed was true. It was Cheryl's car. I mean, I, you know, what do you do if you're driving in a car that your friend told you wasn't stolen and you're beginning to realize as you're sitting there, maybe it was stolen. I'm just trying to play this out. Like, I know you've got all the inferences in your favor. I know the Jackson standard is very much in your favor. But would you at least concede that, you know, there is not a strong case of knowledge here. I mean, the other than her lying. If she hadn't lied initially and given a false name. Would there have been any evidence whatsoever. That she was that she has knowledge. Would there be any other evidence of knowledge. Absent the initial falsehood about her identity. You still have her saying, you know, the ambiguous friend and then shifting to Williams. So she's immediately shifting the narrative. She. Oh, OK. I guess she did say from a friend. So she initially said, you know, is from a friend in an ambiguous sense. And then it was Cheryl. And then it's all I got it from Williams gesturing to the man sitting next to her. So there's the shifting narrative over the course of the police stop. And, you know, just because a defendant offers an explanation of innocence doesn't mean that the fact finder is required to accept it. So even if you take out the falsehood with respect to her name, you still have this narrative that's playing out during the traffic stop. That is on its face. Implausible. It looks questionable. And then she testifies at trial. She offers an explanation. It checks the facts of what she said at the traffic stop. But the way in which it came out during the traffic stop. First, the explanation she's offering a trial. They don't quite line up because the fact finder is entitled to apply common sense to the facts. And if an individual is driving a car that she got from a friend and the friend is sitting right next to her and he said it's her aunt. When asked by police, where did you get this car? One would reasonably expect that is the narrative that comes out in response to that question. But isn't that what she said, Mr. Slavens? I mean, that's what she said. I mean, her friend was sitting next to her. I said, where'd you get the car? She said from a friend. You mean she said a friend instead of this guy? Is that what you mean? Yes, Your Honor. The way in which she answered the officer's questions are, they're vague, they're evasive. It certainly gives rise to the inference that this is implausible. And those are credibility determinations. This is certainly not the most clear-cut case. You know, as opposing counsel emphasizes, she's not driving around with a hot-wired car. You know, this isn't jailbroken. She's using the key fob because of the way in which this car was stolen. So this is certainly not the most clear-cut. But there is enough here for a reasonable fact finder who is in the best position to observe the witnesses when they testify and to weigh the evidence. A reasonable fact finder could find knowledge and did find knowledge in this case. Okay. It sounds to me like what you're telling me is the basis for finding her lack of credibility comes from the video. Yes, Your Honor. Okay. Is the judge in a better position to watch that video than we are? Not strictly, Your Honor. But the judge is also in a better position to observe because there was the officer testimony when they're also testified in this case. So it is considering all of the evidence, including the live witnesses, as well as the video. The video is certainly the most, you know, concrete evidence of what transpired during the traffic stop. But that's the province of the fact finder to consider that evidence, assign the weight, weigh it in comparison to the testimonies, including Winder's explanation at trial where she tries to contextualize these answers. And that was for the fact finder to weigh those various bits of evidence against each other. I understand. But you did agree with me that the basis for finding a lack of credibility came from the video. That is the strongest proof of her lack of credibility. Yes, Your Honor. That's what I think. That's all I see. You don't have to believe what she says at trial, I suppose. You don't have to believe that she you don't have to believe Parker, the guy who testified in her case. And you think that we should defer to the judge's view of that video like we would defer to anything else the judge finds in a trial? Yes, Your Honor. It is the role of the fact finder to consider the evidence, weigh it, assign the relative value and weight and credibility. And that is findings that are entitled to deference regardless of the type of evidence. Okay, thank you. Appreciate it. Yeah, I have a couple. So after she gives the incorrect name, how soon after that does she correct that? I believe she corrects her name after they've had the her and the officer have had the discussion about where does the car come from? I think it's after the officers had that discussion, he asked her, OK, are you going to give me another fake name or you're going to give me your real name now? And then he returns to the car. So I think it's at the end of that. OK, and then we got the fake name. Then right after that, he asked her where she got the car and she says a friend. But she doesn't say, as I think Justice Ellis pointed out, she doesn't say right away, you know, I got it from him, the guy in the car, right? Yeah, so the timeline is she gives the fake name, the officer returns to the vehicle, runs the ID, runs the plates. He's in there for a few minutes before he comes back and then they discuss the origin of the car. OK, well, anyway, here's a question. If she develops this knowledge while she's in the car, will she stop? Is that is that is that proof? I mean, the knowledge had to be before this stop, didn't it? Yes, Your Honor. So so it's if she's just sort of piecing things together in the car, that would not be sufficient, would it? That wouldn't show her knowledge if she suddenly realized I think Justice Ellis kind of alluded to this. The woman could have been realizing once she got stopped that there was something wrong. But that would never be enough for your proof, would it? If she only gained a realization of the car's nature after the traffic stop, then no, that wouldn't. But, you know, that is a question for the fact finder to resolve. No, I agree. OK, now, the other thing is that this really is about as slim as you get when it comes to recent, unexplained, exclusive possession. Right. First of all, there's no evidence of a peeled steering column. There's no evidence of any damage of any kind to this car. Right. No, Your Honor. It was not stolen through those sorts of malicious means. Right. In fact, and she had she had a key that was one where you you just start the car. Right. Yes, Your Honor. Right. Recent. Sure. If this were a day after or something, I would say that's there. But two weeks is I don't know. I guess we could say that. But it's pretty it's pretty scant for being recent. And then you've got, you know, broad daylight. No fleeing. No looting. They're stopped. She stopped right away. So, I mean, those things right at the beginning don't really suggest, you know, this is a hot car, do they? And a front plate. That's not typically very unusual, although you can get a citation for it. But but wouldn't you agree? I mean, what case would you say most supports the judge is finding here when really, I think all of us have already kind of mentioned this, that the basis of this finding is that the judge found that the driver, the defendant, it was incredible. And you agreed she didn't pull all these other inferences in her findings of fact. Right. Yes, Your Honor. So there's two things at play. There's first the question of whether or not the circumstantial evidence is proof of her knowledge itself. Right. So and that circumstantial evidence is basically that her information or the first thing she did was say the wrong name or she lied about her name. Then she said, you know, I got it from a friend, but actually he's the friend right here. She did give the actual owner's name or at least a first name. Yes, and the case was pretty clear on that, that the use of a false identity, offering, you know, a false exculpatory information to police officers, that is circumstantial evidence of consciousness of guilt. Consciousness of guilt. What case that's, you know, knowledge. But give me your case. Give me the best case with facts like this that would would support the decision. I don't have a specific factual analogy off the top of my head. The lies as consciousness of guilt comes from Drake, which is a. Yeah, I understand. I was just asking factually. Okay, you've got you've got her telling some untruths for sure, but she kind of clears up her name right away. And the other things are, well, didn't she also testify that she got the car from Williams? Did she drove with him a week before or something? Wasn't that. Was there testimony by thinking of her trial testimony? Yes, your honor. Yeah. But I mean, that's all information that was in front of the circuit court in this case. And those were questions of what to believe, what not to believe, how to weigh all of this, that those were questions for the circuit court to resolve. I don't have any doubt that the credibility of the witnesses, even, you know. They're on video or in court is up to the fact finder, but I'm just asking you for a case that you think would support where all your your knowledge is based on an auto possession of a stolen motor vehicle in those kinds of cases where the knowledge you don't have any of the other things, really. I mean, I suppose you can argue this was unexplained, but she did have an explanation. But but where you're. The evidence is based on statements that the defendant made and did anyone or did you? Does the state ever rebut? I mean, it was a Cheryl's car. Williams had the car. She said she got it from Williams. Williams was was he the nephew of Cheryl? I don't believe there's any evidence that. OK, I'm just looking for a case that you think really nails this one down. Your Honor, as I said, I don't have a factual analogy off the top of my head. I would just reiterate that Drake and Harris both established that the use of falsehoods is proof of consciousness of guilt. That consciousness of guilt, guilty knowledge is ordinarily proven through circumstantial evidence. That is almost always how a defendant's knowledge is proven. Sure. So in this case, that would certainly directly establish because if the trial court finds she's lying about her name and she's lying to the police officers about where she got the car, because as you acknowledge, the court certainly found that she was not believable. She's not credible. If the circuit court finds all of that information, it gets a question. Why is she lying to the police officers? And the answer to that is obviously because she knows the car is stolen and she is trying to get out of getting arrested for driving a stolen car. And that's under the so-called direct proof of knowledge under the statutory scheme, which has the statutory permissive inference, which is a separate mechanism of guilt. Merely offering any explanation does not rebut the inference. A defendant has to offer a reasonable explanation or be judged on some probabilities. And in this case, for all of the same reasons, lying about her identity, this shifting narrative she gives to the police officers during the traffic stop, as opposed to the explanation that she gives in trial court. Kevin Steele being a figure during the traffic stop and then mysteriously vanishing from her trial testimony. Those are improbabilities that the trial court was entitled to weigh in considering whether or not this explanation was reasonable and whether or not to draw an inference. And for all of those reasons, the trial court, whether under the circumstantial evidence or through a statutory permissive inference, could have readily found her guilty. All right. Any further questions from the panel members? Just one other question. And it just flows out of something you said, Mr. Slavin. And it's that consciousness of guilt and giving the false information. So I want to be clear about the nature of this false information. My name is Stephanie, which is her sister's name. So consciousness of guilt of what? I mean, guilt that Stephanie stole the car or that Emily? How does that work? She gives her sister's name. And you relate that to being able to draw an inference of consciousness of guilt. Guilt of what? My name is Stephanie, which is my Stephanie Winder, the same last name. How does saying her sister's name really give rise to an inference of consciousness of guilt? Well, she's using a false identity. She's attempting to evade responsibility for possessing a stolen motor vehicle. She's using a different name, hoping to distract and mislead police officers. That is why an individual uses a false identity is to obscure their true identity. And that's just one piece of the puzzle. It is the constellation of all the facts together that a fact finder is entitled to weigh. And if nothing else, it certainly reflects on her credibility in and of itself that she is using a false identity, identifying herself as a different individual than who she is. That is a reflection, if nothing else, at least on her credibility. I have nothing else. If I could, Justice McBride, same topic, maybe coming at it slightly differently than Justice Cobbs did, but the same topic. What what does the defendant have to gain if she knows this car is stolen? What does she possibly have to gain by giving a fake name? I mean, if she knows the car is stolen, then she almost certainly knows that they are going to be in a lot of trouble now and she's probably going to be arrested and they're going to figure out what her name is. Right. Like, on the other hand, if she just thought it was a traffic stop. And she may or may not have had ID on her, but she claimed she had no ID on her and gave a fake name. She might just be hoping that cops will go easy on her and say, OK, you know, next time, you know, get that license plate on there or next time put on that signal. If she knew what she was pulled over for, then it would be more specific. But I'm I'm thinking about the specific lie she's telling and how she would expect that that would ever get her out of the trouble that she was facing if she knew the car was stolen. Well, at the outset of the traffic stop, he pulls her over and says it's for a license plate. OK, OK. So so, yeah, so so it would be if you have an outstanding warrant and you're hoping if you give your name, they're going to run it. And you're if you have an outstanding warrant, you're in a lot of trouble. On the other hand, if you say I left my driver's license at home and my name is Stephanie. You know, maybe the maybe the officer decides to give you a pass, give you a break. Maybe not, but it's worth a shot. Like I could under that would make sense to lie in that situation, not saying it's OK. You know, don't get me wrong, but I could understand why someone might want to roll that dice. But if you know the car is stolen, your name doesn't really matter. And it's and and you're only going to be caught in that lie sooner or later. You pretty much know that. Right. Like, why would the lie make sense in that situation? What am I missing? I can't speculate to what was precisely going through her head at that moment. But again, you know, the use of the fake name is just one piece of the puzzle. It is at the outset. She begins with a falsehood. She goes from falsehood to falsehood, spinning this increasingly implausible narrative. And what was her second falsehood? I didn't hear falsehoods. I mean, her next statement was a friend. Which. Is not the most specific answer she could have given, but it's not false, is it? If she thinks Williams. If she thinks Williams is the one who, you know, it's not. Well, she knows it's not Williams's car, but it's his aunt's saying a friend doesn't seem false, does it? There's the implication in I got the car from a friend. There's the implication that I'm driving it with permission when the car is clearly stolen. And no one has permission to be driving the car. But we're putting the car before the horse. I mean, yes, the car was stolen. But what is the proof that she knew that? Like you said, falsehood after falsehood. I know of one falsehood. She lied about her name. What's the second falsehood? That she, well, when she says she's driving it, she got it from a friend. The implication there is that she has permission to drive the car properly. And she follows that up with the car belongs to Cheryl. Again, the implication is Cheryl is the friend. She's driving it with the permission of Cheryl. It's only by the fourth answer she even gets to, oh, I got it from Williams. And again, it's looking at the way this plays out through the stop. There is an inference to draw that she is spinning this narrative, trying to get out of trouble. And while she certainly offers her competing narrative at trial that she's advancing on appeal, the question of which narrative to believe versus the other, that was a question for the fact finder. And the fact finder clearly did not believe the narrative that defendant has offered and instead found that these were falsehoods and that there was enough evidence of her guilt, including her knowledge to find her guilty of possession of the car. OK, so you would continue to say there was more than one falsehood. That would be your position. Yes, your honor, that this the way she is attempting to represent this to police officers. Yeah, I mean, look, counsel, I'm not trying to be a jerk. I think your point is that that she was being evasive in her answers. She was being she's been much more forthcoming. And it makes her look suspicious that she was a little cute with her answers. I got it from a friend, not the guy sitting right next to me or his aunt, but a friend. She was being vague, maybe a little elusive. But I just want to be careful how we're saying this. Certainly, your honor. There's certainly one falsehood, but as I read it, that's just one. And then the rest of it is just she was elusive. Is that I just want to make sure we're on the same page. Would you agree or disagree with how I'm describing it? No, that's a reasonable description. But even under that, that is information that the circuit court is entitled to consider. Yeah, sure. Of course. Okay, thank you. Thank you. All right. With that, we're going to let Miss Cohen have a brief rebuttal. It's going to be for your honor. So, of course, yes. Desmond McBride, you asked for a case that's on all fours. And I would just like to suggest that Gordon is on all fours. And the state, of course, attempted to distinguish Gordon on the basis that in Gordon, the friend from whom the defendant had authorization to drive the car frequently drove the car with permission of the owner. But the question is what the defendant knew, not what the owner knew. And so even in that very narrow factual circumstance, this case is identical to Gordon because Miss Winder had the belief that her friend and passenger, Dale Williams, had permission to drive the car. And in the record, it suggests that he had been seen driving the car by others as well. So without any corroboration of Miss Winder's guilty knowledge, it's identical to Gordon. And then the other thing that I just wanted to highlight again is, as Desmond McBride and Justice Ellisie both pointed out, her developing awareness over the course of the traffic stop that she maybe should not have believed her passenger Williams's explanation for how he got the car is an inference that can easily be drawn from this record. And it's equally plausible as the inference of knowledge, if not more plausible. When she's pulled over initially, she uses a false name. She thinks it's for a taillight. The officer goes back to his car for six minutes. And during that time, there's no evidence of what transpired between the passengers, between the occupants of the car. So then when the officer comes back and is asking questions about the origins of the vehicle, it's similar to if you're pulled over and the officer says, how fast are you going? You infer from that that you're being pulled over for speeding. So she has a daunting awareness that maybe she should not have trusted her passenger. But very quickly, I want to repeat again, of course, you guys can review the video for yourselves, but her series of mistruths or inconsistencies, which really are not inconsistent, but regardless, they happen very quickly. She isn't trying to paint this elaborate false narrative. She says, oh, I got it from my friend. Oh, it's Cheryl's car. Oh, within 15 seconds, says, I got it from Williams, who then concedes, yeah, I gave it to her. So her behavior during the traffic stop certainly did not raise the inference that all along she knew it was stolen. At best, it raises an inference that once she's being asked about the origin of the car and she's being pulled out of the car and in cuffs, that she starts to doubt the explanation that she had previously been given. So certainly it's not proof beyond a reasonable doubt that at the time that she was pulled over, she knew it was stolen. And in fact, the fact that she was the one found driving the car raises an inference that Darrell Williams did not tell her it was stolen. Because why would she agree, as between the two of them, to drive the car on his behalf when doing so would get her a conviction for possession of a stolen motor vehicle? So for these reasons and those stated in our briefs, we ask that you vacate Ms. Winder's conviction. Any other questions? No, I don't think so. Thank you. Thank you both. All right. Thank you both for your presentations today. The case will be taken under advisement and a decision will be issued at some point in the future. So thank you both again. And this concludes the oral arguments on this case.